## UNITED STATES DISTRICT COURT
## FOR THE DISCTRICT OF COLUMBIA

**ELITE ENTERTAINMENT, INC** }
**Suite 200** }
**11211 Waples Mill Road** }
**Fairfax, Virginia -22030** }
      **Serve: Onkar N.Sharma** }
            **Sharma Law Group** }
            **9911 Georgia Avenue** }
            **Silver Spring. MD-20902** }   Case: 1:08-cv-00641
                      **Plaintiff** }   Assigned To : Urbina, Ricardo M.
                               }   Assign. Date : 4/14/2008
**V.** }   Description: TRO/PI
                               }

**HIMESH VIPINBHAI RESHAMMIYA** }
**d/b/a Himesh Reshammiya** }
**Movie Culture** }
**A-501, Sea Shell Apartments** }
**Seven Bungalows,** }
**Versova, ANDHERI (West)** }
**MUMBAI -400 061** }
            **Defendant** }

## COMPLAINT

Plaintiff Vijay Taneja ("VJ"), by his attorneys Sharma Law Group and Onkar N.Sharma, as and for his Complaint against defendant Himesh Vipinbhai Reshammiya d/b/a Himesh Reshammiya Movie Culture ("Himesh") allege as follows:

### ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### The Parties

1)    Elite Entertainment, Inc.,("Elite") is a corporation organized and existing under the laws of the Commonwealth of Virginia with principal office located at Suite 200, 11211 Waples Mill Road, Fairfax, Virginia 22030. Elite is

engaged in the business of, interalia, promoting performances of live shows of Bombay Film Industry's (Bollywood) artist and movie stars in the United States of America ("U.S.A.") and other countries. Elite is owned by Mr. Vijay Taneja ("VJ"). VJ is recognized for his successful carrier of more than twenty years as an international promoter of Bollywood stars. At all times relevant to this Complaint VJ acted for an on behalf of Elite.

2)    Himesh Vipinbhai Reshammiya ("Himesh") is an accomplished music Director, and singer residing at A-501, Sea Shell Apartments CHS, 7 Bungalows, Versova, Andheri(West), Mumbai 400061, India.

## JURISDICTION AND VENUE

3)    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C § 1332 (A) as the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs and is between citizen of Commonwealth of Virginia and a Citizen of India.

4)    Venue in this District is proper pursuant to 28 U.S.C § 1391 because a substantial part of the events and omissions giving rise to this claim occurred in this District, and/or a substantial part of Elite's property, bank accounts are, situated in this District and Defendant is subject to personal jurisdiction in this District.

5)    Mr. Vijay Taneja, President of Elite has verified under the penalty of perjury (Affidavit of Mr. Taneja with Att.1, collectively identified as Exh.A, appended this Complaint and incorporated here by reference that:

A) In September 2006, Himesh gave live performance sponsored by Elite

2

Entertainment Inc.,("Elite") in Washington D.C. Metropolitan Area.

B) In September 2006, Himesh offered to me the following business deal elements to produce the Film:

   a) Joint Production of the Film at an estimated cost of Indian Rupees 40 Crore to be invested by me (appx. U.S. $ 10 Million).

   b) Production of the Film projected to be completed by February 2007.

   c) The Film was estimated to produce revenues in the range of Indian Rupees 100 to 150 Crores (US $ 25 Million to 37.5 Million).

   d) The parties agreed to equally share profit from the film, at 50% after return of my estimated investment of Rupees. 40 Crores or approximately U.S. $10 Million.

   e) My investment in the Film is secured by my rights to revenues from the "World wide live performances, and release of other productions of Himesh".

C) I accepted the business deal elements and joined Himesh in executing Agreement dated September 25, 2006 (the 'Agreement"). A true and correct copy of the Agreement appended to this Affidavit. In all my dealings with Himesh, I have acted on behalf of Elite , A Virginia Corporation, owned by me.

D) Pursuant to the Agreement I have transferred from my Elite bank account(s) at BB&T bank in the District of Columbia to Himesh the funds set forth in the chart below. In addition Himesh has collected in excess of Indian Rupees (INR) 84,800,000.00 or U.S.$ 2,120,000.00, from licensing of Film's distribution, musical rights and intellectual property rights. Accordingly, Himesh is required to account for the Film's total receipts in excess of INR 402,814,128.00 or U.S.$ 9,344,950.00, collectively hereinafter "Film's Investment" to produce "Aap Ka Kurror", the Real Luv story (the "Film").

3

| Sr.No. | Date | TTNo | USD | INR |
|--------|------|------|-----|-----|
| 1. | 28.9.2006 | TTMNY 270090802 | 949980 | 43509084.00 |
| 2. | 10.11.2006 | TTMNY 313090136 | 999980 | 44319113.60 |
| 3. | 14.2.2007 | TTMNY 040105612 | 999930 | 43926924.90 |
| 4. | 26.2.2007 | TTMNY 054060382 | 849980 | 37441619.00 |
| 5. | 28.2.2007 | TTMNY 058084268 | 659980 | 28664118.00 |
| 6. | 6.3.2007 | TTMNY 064108527 | 699980 | 31000714.24 |
| 7. | 17.3.2007 | TTMNY 074103134 | 499980 | 21935372.55 |
| 8. | 29.3.2007 | TTMNY 085109133 | 599973 | 25828837.65 |
| 9. | 18.4.2007 | TTMNY 106097462 | 549980 | 22879168.00 |
| 10. | 3.5.2007 | TTMNY 117108149 | 424980 | 17509176.00 |
| GROSS TOTAL | | USD | 7,224,743.00+ 207.00 fees | INR 317014127.94 |

E)   Production of Film has been completed and it was released on June 29,2007.

F)   Pursuant to the Agreement, Himesh is obligated to use Film's Investment only to produce the Film.

G)   Himesh has distributed to me INR 70,500,000.00 (Rs.7.5 Crore) or U.S.$ 1.8 million out of the revenues generated by the Film.

H)   Despite my demands, Himesh has refused to provide to me  accounting of all revenues, actual expenses, supported by vouchers, copies of cancelled checks, invoices, books, records, financial statements and bank statements related to the Film.   Himesh has further refused to provide to me the

evidence to support application of the Film's Investment to production of the Film.

I)      Himesh is obligated to provide to me   accounting all revenues, expenses, invoices, books, records, financial statements and bank statements, related to the Film.   In addition Himesh is obligated to provide to me accounting of all revenues and expenses of his Worldwide performances and release of other productions since September 2006. Himesh has confirmed to me his promise to secure my investment in Film on at least five (5) times before and signing the Agreement.  Himesh has further agreed to implement his promise to return the Film Investment to me by providing to me accounting of application of the Film Investment provided by me and securing its return from the revenues of his "Worldwide live performances and release of other productions".

J)      Himesh has refused to produce the accounting of all revenues and expenses from his "Worldwide Live performances and release of other Productions" since September 2006.

K)      Himesh is continuing to perform live shows and release   other productions including but not limited to the performances in India.

L)      I am entitled to accounting of   application of Film's Investment provided by me to Himesh.

M)      As a direct result of this situation, Elite is faced with cash and credit crunch.   Elite has not performed any show in 2008.   Elite faced with immediate threat to its ability to continue its successful business of promoting international live performances of Bollywood stars.

N)   I am faced with immediate harm as a result of continuing refusal of Himesh to provide to me accounting, books and records, invoices, cancelled checks supporting bank statements, actual expenses, and  financial statements relating to the Film, his Worldwide live performances, and other productions. This harm is continuing and irreparable.

O)   In the absence of injunctive relief and temporary restraining order against Himesh I will be deprived of an opportunity to effectively enforce the terms of the Agreement, and suffer an immediate and irreparable harm.

5

6)    Himesh continues to receive payments related to the Film and Worldwide live performances and release of other productions by Himesh, which he is no longer authorized to receive.  Elite is entitled to an accounting of all monies received by Himesh with respect to the Film, and Worldwide live performances and release of other Production by Himesh.

7)    Elite has fully performed all its obligations under or relating to the Agreement.

## AS AND FOR A FIRST CAUSE OF ACTION
## (BREACH OF CONTRACT)

8)    Elite repeats and realleges the allegation of Paragraph 1-6 above, as if fully set forth herein.

9)    In the Agreement Himesh, "The Producer" and Elite " the Joint Producer" entered into Joint Venture to produce "the Film", at a cost of approximately $10 Million.

10)    The parties agreed that the credit title of the Producer and Joint Producer, shall be mentioned in the movie as follows:

VIJAY TANEJA
PRESENTS

A HIMESH RESHAMMIYA PRODUCTION
Produced by Himesh Reshammiya & Vijay Taneja

6

11)  In breach of the Agreement, Himesh has released the Film without giving the credit title as set forth above.

12)  In the Agreement Elite agreed to finance the production of the Film, and Himesh agreed to keep and provide to Elite correct and true accounting of all receipts and actual expenses, supported by vouchers, copies, of cancelled checks, books, records, financial statements and bank statements related to the Film Investment (collectively hereinafter " Accounting, and Supporting Documents"), more fully listed in Exh. B.

13)  In breach of the Agreement, Himesh has refused and/or failed to provide correct and true Accounting and Supporting Documents.

14)  In the Agreement Himesh agreed to provide accounting of all revenues after September 2006 from the Worldwide live performances and release of other productions to secure Elite's Film Investment, collectively hereinafter "Accounting of All Revenues", more fully listed in Exh.C.

15)  In breach of the Agreement Himesh has failed and/or refused to provide Accounting of All Revenues after September 2006.

16)  Elite is entitled to an accounting of all the funds spent by Himesh in producing the Film, and all the funds received by Himesh from the release, distribution, and exhibition of the Film.  In addition Elite is entitled to accounting of all the funds received by Himesh from his Worldwide live performances and release of other productions.

7

17) The breaches of the Agreement by Himesh set forth above and continuing refusal by Himesh to Comply with Elite's request to provide, transfer, and deliver the required Accounting and Supporting Documents relating to the Film, and Accounting of all Revenues relating to Himesh's Worldwide live performances and release of other productions, are material and contrary to the rights of Elite.

## AS AND FOR SECOND CAUSE OF ACTION
## (SPECIFIC PERFORMANCE)

18) Elite repeats and realleges the allegations of Paragraphs 1-17 above, as if fully set forth herein.

19) Himesh failure to provide Accounting, and Supporting Documents and records, evidence of payment of actual expenses, invoices, cancelled checks, bank statements, and financial statements for the purpose of effectuating accounting of the Film Investment, and Accounting of All Revenues for the Worldwide live performance and release of other productions of Himesh, was and is a breach of the Agreement.

20) Elite is entitled to be put in the same position that it would have been, had Himesh performed his contractual obligations.

21) Elite has no adequate remedy at law with respect to Himesh's failure to provide accounting and deliver the documents required by the Agreement.

8

22)    To enforce the terms of the Agreement, Elite is entitled to specific performance by Himesh of his obligations under the Agreement to provide true and accurate accounting, release, transfer and deliver to Elite accounting records, evidence of payment of actual expenses, invoices, cancelled checks, bank statements and financial statements relating to the Film Investment, and Accounting of All Revenues for the Worldwide live performances and release of other productions by Himesh.

## AS AND FOR THIRD CAUSE OF ACTION
### (CONVERSION)

23)    Elite repeats and realleges the allegations of Paragraphs 1-22 above, as if fully set forth herein.

24)    Himesh's unlawful retention of the accounting and supporting documents of the Film Investment, and Worldwide live performances and release of other production of Himesh, is an intentional and unauthorized exercise of control over the property belonging to Elite, interfering with the lawful right of possession of Elite therein.  Elite has a possessory right and interest in these the accounting, records, invoices, files, documents, financial and banking statements, and Himesh's continued dominion there over and interference with Elite's possessory right and interest is in derogation of Elite's lawful rights and interests.

25)    As such, Himesh's conduct with respect to Elite's rights to obtaining accounting, records, files and documents for the Film Investment and Worldwide live performances and release of other production by Himesh, constitutes the tort of conversion.

9

26)   For the reasons set forth above, to remedy such conversion, Elite is entitled to an order directing Himesh to release, transfer and deliver to Elite all accounting records, files and document related to the Film Investment, and Worldwide live performances and release of other production by Himesh, for the purpose of effectuating the terms of the Agreement.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (UNJUST EN RICHMENT)

27)   Elite repeats and realleges the allegations of Paragraph 1-26 above, as if fully set forth herein.

28)   As set forth above, Himesh continues to hold and exercise dominion and control over the Accounting and Supporting Documents, and Accounting of All Revenues that belong to Elite.

29)   Himesh is, has been and continues to be unjustly enriched from holding the Accounting and Supporting Documents, and Accounting of All Revenues that belong to Elite.

30)   Under principles of equity and good conscience, Himesh should not be permitted to be unjustly enriched by keeping the Accounting and Supporting Documents, and Accounting of ALL Revenues that do not belong to Himesh.

31)   For the reasons set forth above, to remedy such unjust enrichment, Elite is entitled to an order directing Himesh to release, transfer, and deliver to Elite the Accounting and Supporting Documents, and Accounting of All Revenues for the purpose of effectuating the terms of the Agreement.

**WHEREFORE**, Elite demands judgment in its favor and against Himesh as follows:

      1)     On the First Cause of Action, awarding Elite against Himesh a monetary judgment in the amount of not less than $10 million, plus interest, attorney fees and costs, or the damages to be proven at trial; and

      ii)    On the Second, Third, and Fourth causes of Action, awarding Elite against Himesh an order directing specific performance by Himesh of its obligation to deliver to Elite Accounting and Supporting Documents, and Accounting of All Revenues, and damages to be proven at trial plus interest, attorneys fees and costs; and

      iii)   Granting such other or further relief as the court may deem just and proper in the circumstances.

                                     Respectfully Submitted

Date: April 14, 2008                Sharma Law Group

                                   By _Onkar Sharma_
                                      Onkar N.Sharma
                                      Bar # 217810

Sharma Law Group
9911 Georgia Avenue
Silver Spring
MD-20902
Phone: 301-593-1983
Fax 301-681-1222

11

## **JURY DEMAND**

Elite requests trial before Jury.

Respectfully Submitted

By _Onkar Sharma_
Onkar N.Sharma
Bar # 217810    4/14/08

Sharma Law Group
9911 Georgia Avenue
Silver Spring
MD-20902
Phone: 301-593-1983
Fax 301-681-1222

12

# UNITED STATES DISTRICT COURT
## FOR THE DISCTRICT OF COLUMBIA

ELITE ENTERTAINMENT, INC    }
Suite 200    }
11211 Waples Mill Road    }
Fairfax, Virginia -22030    }
  Serve: Onkar N.Sharma    }
    Sharma Law Group    }
    9911 Georgia Avenue    }
    Silver Spring. MD-20902    }
      Plaintiff    }
          }
V.    }
      }
HIMESH VIPIN BHAI RESHAMMIYA    }
d/b/a Himesh Reshammiya    }
Movie Culture    }
A-501, Sea Shell Apartments    }
Seven Bunglows,    }
Versova, ANDHERI (West)    }
MUMBAI -400 061    }
    Defendant    }

## AFFIDAVIT OF VIJAY TANEJA

  I am Vijay Taneja, above eighteen (18) years of age and competent to testify. Since September or prior to September 2006, I am dealing with Mr. Himesh Vipinbhai Reshammiya doing business as (d/b/a) Himesh Reshammiya Movie Culture, hereinafter, ""Himesh" relating among others, to financing, production, and distribution of movie known as "AAP KA SURROR", THE REAL

LUV STORY hereinafter the "Film". Based upon my knowledge, experience and dealings with Himesh, I verify the following facts:

1)      In September 2006, Himesh gave live performance sponsored by Elite Entertainment Inc.,("Elite") in Washington D.C. Metropolitan Area.

2)      In September 2006, Himesh offered to me the following business deal elements to produce the Film:

  a) Joint Production of the Film at an estimated cost of Indian Rupees 40 Crore to be invested by me (appx. U.S. $ 10 Million).

  b) Production of the Film projected to be completed by February 2007.

  c) The Film was estimated to produced revenues in the range of Indian Rupees 100 to 150 Crores (US $ 25 Million to 37.5 Million).

  d) The parties agreed to equally share profit from the film, at 50% each after return of my estimated investment of Rupees. 40 Crores or approximately U.S. $10 Million.

  e) My investment in the Film is secured by my rights to revenues from the "World wide live performances, and release of other productions of Himesh".

3)      I accepted the business deal elements and joined Himesh in executing Agreement dated September 25, 2006 (the 'Agreement"). A true and correct copy of the Agreement appended to this Affidavit. In all my dealings with

2

Himesh, I have acted on behalf of Elite , A Virginia Corporation, owned by me.

4)    Pursuant to the Agreement I have transferred from my Elite bank account(s) at BB&T bank in the District of Columbia to Himesh the funds set forth in the chart below. In addition Himesh has collected in excess of Indian Rupees (INR) 84,800,000.00 or U.S.$ 2,120,000.00, from licensing of Film's distribution, musical rights and intellectual property rights. Accordingly, Himesh is required to account for the Film's total receipts in excess of INR 402,814,128.00 or U.S.$ 9,344,950.00,    collectively hereinafter "Film's Investment".

| Sr.No. | Date | TTNo | USD | INR |
|--------|------|------|-----|-----|
| 1. | 28.9.2006 | TTMNY 270090802 | 949980 | 43509084.00 |
| 2. | 10.11.2006 | TTMNY 313090136 | 999980 | 44319113.60 |
| 3. | 14.2.2007 | TTMNY 040105612 | 999930 | 43926924.90 |
| 4. | 26.2.2007 | TTMNY 054060382 | 849980 | 37441619.00 |
| 5. | 28.2.2007 | TTMNY 058084268 | 659980 | 28664118.00 |
| 6. | 6.3.2007 | TTMNY 064108527 | 699980 | 31000714.24 |
| 7. | 17.3.2007 | TTMNY 074103134 | 499980 | 21935372.55 |
| 8. | 29.3.2007 | TTMNY 085109133 | 599973 | 25828837.65 |

3

| 9. | 18.4.2007 | TTMNY 106097462 | 549980 | 22879168.00 |
| 10. | 3.5.2007 | TTMNY 117108149 | 424980 | 17509176.00 |
| GROSS TOTAL | | USD | 7,224,743.00+ 207.00 fees | INR 317014127.94 |

5)    Production of Film has been completed and it was released on June 29,2007.

6)    Pursuant to the Agreement, Himesh is obligated to use Film's Investment only to produce the Film.

7)    Himesh has distributed to me INR 70,500,000.00 (Rs.7.5 Crore) or U.S.$ 1.8 million out of the revenues generated by the Film.

8)    Despite my demands, Himesh has refused to provide to me  accounting of all revenues, actual expenses, supported by vouchers, copies of cancelled checks, invoices, books, records, financial statements and bank statements related to the Film.  Himesh has further refused to provide to me the evidence to support application of the Film's Investment to production of the Film.

9)    Himesh is obligated to provide to me  accounting all revenues, expenses, invoices, books, records, financial statements and bank statements, related to the

4

Film.   In addition Himesh is obligated to provide to me accounting of all revenues and expenses of his Worldwide performances and release of other productions since September 2006. Himesh has confirmed to me his promise to secure my investment in Film on at least five (5) times before and signing the Agreement.   Himesh has further agreed to implement his promise to return the Film Investment to me by providing to me accounting of application of the Film Investment provided by me and securing its return from the revenues of his "Worldwide live performances and release of other productions".

10)   Himesh has refused to produce the accounting of all revenues and expenses from his "Worldwide Live performances and release of other Productions" since September 2006.

11)   Himesh is continuing to perform live shows and release   other productions including but not limited to the performances in India.

12)   I am entitled to accounting of application of Film's Investment provided by me to Himesh.

13)     As a direct result of this situation, Elite is faced with cash and credit crunch. Elite has not performed any show in 2008. Elite faced with immediate threat of its ability to continue its successful business of providing international live performances of Bollywood stars.

14)     I am faced with immediate harm as a result of continuing refusal of Himesh to provide to me accounting, books and records, invoices, cancelled checks supporting bank statements, actual expenses, and financial statements relating to the Film, his Worldwide live performances, and other productions. This harm is continuing and irreparable.

15)     In the absence of injunctive relief and temporary restraining order against Himesh I will be deprived of an opportunity to effectively enforce the terms of the Agreement, and suffer an immediate and irreparable harm.

I have no other remedy at law or equity to protect my interest and enforce my contractual rights against Himesh.

Under the penalty of perjury I verify that the above statement is true and correct.

Elite Entertainment, Inc

Vijay Taneja
President

6

Commonwealth of Virginia
COUNTY OF FAIRFAX

to wit :

I hereby certify that on this _11th_ day of _April_, 2008, before me, the

subscriber, a Notary Public of the State and County aforesaid, VIJAY TANEJA

personally appeared, known to me (or satisfactorily proven) to be the person whose

name is subscribed to the within instrument, and acknowledged the Affidavit to

be his act, and in my presence signed and sealed the same, giving oath under

penalties of perjury that the consideration recited herein is correct.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires _____

MOHANKUMAR ARUMUGHAM
NOTARY PUBLIC COMMONWEALTH OF VIRGINIA
My Commission Expires February 28, 2009
# 262325

7

## EXHIBIT –B

## ACCOUNTING AND SUPPORTING DOCUMENTS
## RELATED TO THE FILM:
## AAP KA SURROR (The Real Luv Story)

1)    Bank Statements from September 2006 to Current for Account Numbers:

    i)    110-050978-001, Hong Kong & Sanghai Banking Corp.Ltd. Lokhandwala Branch, Andheri (West), Mumbai, India.

    ii)    All Accounts maintained by Himesh V. Reshaammiya d/b/a Reshammiya Movie Culture with Dutsche Bank, and all other banks.

    iii)    All cancelled checks.

2)    Evidence of all actual expenses e.g invoices, voucher and proof of payment of each expense items by cancelled check or other evidence of receipt for payment of actual expenses including but not limited to payments to each Artist, Director and his team, Technicians, Lab Editing, still photo and stock, music, travelling within and outside India, setting and properties, action and thriller expenses, costume for Artists, Dancers, Junior Artist, automobile expense, professional fees, conveyance, insurance, printing and stationary, promo, launch and distribution expenses, hotel charges, food expenses, and sound and light charges.

3)    All files, books of records, documents, maintained in the regular course of business since September 2006.

4)    All financial statements audited and/or unaudited since September 2006.

5)    All tax returns since September 2006.

6)    All items supplemented upon completion of discovery.

12

<u>EXHIBIT –C</u>

## <u>ACCOUNTING OF ALL REVENUES FROM THE WORLDWIDE LIVE PERFORMANCES AND RELEASE OF OTHER PRODUCTION BY HIMESH</u>

1) List of each live performance of Himesh since September 2006.

2) List each production released by Himesh since September 2006.

3) Bank statements from September 2006 to current for all bank account maintained by Himesh V. Rashammiya and / or Rashammiya Movie Culture to deposit the revenues generated by items 1 and 2 above.

4) All files, books of records documents for item 1 and 2 above, maintained in the regular course of business.

5) All financial statement audited and/or unaudited for item 1 and 2 above.

6) All tax returns since September 2006.

7) All items supplemented upon completion of discovery.

13

# ATT.1

Case 1:08-cv-00641-RMU     Document 1-4     Filed 04/14/2008     Page 2 of 6



## AGREEMENT

This Article of Agreement for Joint Venture made at Mumbai this **25th day of September, 2006** between Himesh Reshammiya, an accomplished Music Director and Singer, Indian Inhabitant, residing at A – 501, Sea Shell Apartments CHS., 7 – Bungalows, Versova, Andheri (West), Mumbai 400 061 hereinafter called and referred to as **"THE PRODUCER"** (which expression shall unless it be repugnant or contrary to the meaning thereof shall mean and include his heirs, executors, administrators and assigns) of the ONE PART; and

Vijay Taneja, a Non-resident Indian, having address 11211 waples mill rd #200, Fairfax, va 22030 U.S.A and President of Elite Entertainment Inc. U.S.A, hereinafter called and referred to as **"THE JOINT PRODUCER"** (which expression shall unless it be repugnant or contrary to the meaning thereof shall mean and include his heirs, executors, administrators and assigns) of the OTHER PART;

WHEREAS:-

a) The Joint Producer has been investing, sponsoring and promoting world stage shows of Himesh Reshammiya and being pleased with the Producer's performance and the success of the shows, is desirous to sponsor and finance the movie as a Joint Producer which Himesh Reshammiya is contemplating and planning to Produce, Exhibit and Distribute. The Joint Producer on his part shall bring into this joint venture a sum of Rs. 40 crores by way of his contribution for the said movie.

b)  The Joint Producer has agreed to finance the movie to be produced by the Producer Himesh Reshammiya, and Himesh Reshammiya on his part is ready and willing to accept the financial contribution provided by the Joint Producer to Produce a Movie entitled, "AAP KAA SURROOR, the Moviee, THE REAL LUV STORY," (hereinafter referred to as the "Movie") upon the terms and conditions hereinafter mentioned.

**NOW IT IS HEREBY AGREED AND RECORDED BY AND BETWEEN THE PARTIES HERETO AS FOLLOWS:-**

1.  The Joint Producer has agreed with the Producer to invest a sum of Rs. 40 Crores (Rupees Forty Crores Only) the full cost of the movie for the sole purpose of making of the aforesaid Movie and the producer shall not invest any amount and shall not bear losses of the joint venture if any. The said remittance would be Bank-to-Bank transaction between the Bankers of the Joint Producer and Producer. The banking details of the Producer are as follows:-

Name :-         Himesh Reshammiya Moviee A/C

Account No: -   110076031001

Bank -          HSBC Bank

Branch: -       LKH

Swift Code: -   HSBCINBB

Add: -          E003\004, Manish Garden,

                JP Road, Andheri (West) Mumbai 400058.

The remittance shall be made as per the scheduled herein provided :-

• 2

| Sr. No. | Date | Amount (Rs/-) |
|---|---|---|
| 1. | September 28, 2006 | 5 Crores (To be utilized for the prior preparation of promo etc and Mahurat of the said Movie, "AAP KAA SURROOR, the Moviee. THE REAL LUV STORY") |
| 2. | October 25, 2006 | 5 Crores |
| 3. | November 25, 2006 | 7.5 Crores |
| 4. | December 24, 2006 | 7.5 Crores |
| 5. | January 20, 2007 | 7.5 Crores |
| 6. | February 20, 2007 | 7.5 Crores |
| Total | | 40 Crores |

2. It is hereby mutually agreed that the estimate cost for making the said Movie will be Rupees Forty Crores Only, including all incidental charges thereto.

3. It is hereby mutually agreed by and between the parties to this agreement that as per the planning and projection the Movie is estimated to be completed by the end of February 2007 subject to any reasons whatsoever, beyond the control of the Producer.

3

4.  It is hereby agreed by the Joint Producer that the timely payments shall be the essence of the Contract of this Agreement, to enable the Producer for making, completing and producing the said Movie, as per the time line envisaged herein above.

5.  It is hereby agreed by and between the parties to this Agreement that in consideration of Rupees Forty Crores of the Joint Producer having invested in this joint venture for the said Movie, the Joint Producer shall be entitled to receive Fifty Percent (50%) of the Profit in the said Venture after having recovered his invested amount of Rupees Forty Crores first, from the proceeds receivable from the sale of various rights of the movie.

6.  Further, the Parties hereto agree that the credit title of the Producer and Joint Producer, shall be mentioned in the Movie as follows:

1)      *VIJAY TANEJA*

        *PRESENTS*

*A HIMESH RESHAMMIYA PRODUCTION*

2) Produced By Himesh Reshammiya & Vijay Taneja

7.  As per the estimate, calculations and projections as discussed by and between the parties, the estimated recovery from of the said Movie is expected to be between Rupees One Hundred Crore and Rupees One Hundred and Fifty Crores, from various avenues available for its commercial exploitation through its territorial distribution rights in all over the world, viz. India,

4

Pakistan overseas distribution market, etc. The commercial exploitation of the said Movie shall also be by way of, but not limited to, music rights, sale of merchandises and such other rights arising from the said Venture. Notwithstanding anything stated in this agreement it is agreed between the parties that the Producer in no way guarantees and / or accepts personal liability for the returns and or losses in the said venture, as herein mentioned, as they are based on estimates and projections which are subject to variables.

**IN WITNESS WHEREOF**, the parties hereto have executed this agreement, in duplicate, the day and year first hereinabove written.

**SIGNED, SEALED AND DELIVERED**          )
By the within name "THE PRODUCER"          )
Himesh Reshammiya                          )
                                           )

**SIGNED, SEALED AND DELIVERED**          )
By the within name "THE JOINT PRODUCER"    )
Vijay Taneja, President of                 )
Elite Entertainment Limited Inc. Fairfax, U.S.A     )

**WITNESS:**

2.

5

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

**I (a) PLAINTIFFS** Elite Entertainment, Inc

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF *FAIRFAX*
11211 WAPLES MILL ROAD
(EXCEPT IN U.S. PLAINTIFF CASES) *VIRGINIA*
— *22030*

**DEFENDANTS** Himesh Reshamiya, Movie Culture, A-501 Sea Shell Apartments, Seven Bunglows, Versova, ANOMERI

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT *MUMBA I (no*
(IN U.S. PLAINTIFF CASES ONLY) *INDIA*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED
— *400 061*

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
ONKAR. N. SHARMA (SHARMA LAN GROUP),
9911 GEORGIA AVE. SILVER SPRING MD-20905, (301)-593-1983

ATTORNEYS (IF KNOWN)

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☒ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**☐ A. Antitrust**

☐ 410 Antitrust

**☐ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☐ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

910
Breach of
Contract

## ☐ E.  General Civil (Other)  OR  ☐ F.  Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Immigration**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus- Alien Detainee
☐ 465 Other Immigration Actions

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant

☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.

☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not Administrative Agency Review or Privacy Act)

| ☐ G. Habeas Corpus/ 2255 | ☐ H. Employment Discrimination | ☐ I. FOIA/PRIVACY ACT | ☐ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ K. Labor/ERISA (non-employment) | ☐ L. Other Civil Rights (non-employment) | ☐ M. Contract | ☐ N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 Americans w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☒ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ Multi district Litigation ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

**VII. REQUESTED IN COMPLAINT** CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    DEMAND $ *mill soon*  Check YES only if demanded in complaint  JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See instruction) ☐ YES ☒ NO If yes, please complete related case form.

DATE 4/14/08    SIGNATURE OF ATTORNEY OF RECORD *Oscar Sharne*

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

forms\js-44.wpd